IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSMAN YOUSIF,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DEPUTY SHERIFF DEFRANCE McLEMORE and DOES 1–100,<br><br>　　　　Defendant.<br>　／ | No. C 15-04887 WHA<br><br>**ORDER GRANTING DEFENDANT McLEMORE'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this action for wrongful arrest and excessive force, the sole remaining defendant moves for summary judgment or, in the alternative, terminating sanctions. To the extent stated below, defendant's motion for summary judgment is **GRANTED**.

**STATEMENT**

Defendant Defrance McLemore served as a sheriff's deputy in the San Mateo County Sheriff's office. Deputy McLemore knew of plaintiff Osman Yousif as someone who had been charged and convicted of criminal activity, who associated with known criminal suspects, such as Gilberto "Colla" Flores, and who frequently interfered with law enforcement activity (McLemore Decl. ¶ 8).

On September 20, 2015, Deputy McLemore was on patrol duty in a marked vehicle at a shopping center in Half Moon Bay. At 10:45 p.m., he observed a white vehicle parked in a lot behind one of the two stores that remained open at the time — a lot he knew to be the locus of

criminal activity. Deputy McLemore approached the white vehicle with the goal of speaking with its occupants, though he did not activate his patrol lights (McLemore Dep. at 17–19).

As Deputy McLemore approached, the white vehicle departed and headed towards the entrance of the second store that remained open. Deputy McLemore pursued. When the white vehicle arrived at the entrance to the second location, the individual in the passenger seat exited the vehicle and entered the store. Deputy McLemore recognized the passenger as Yousif (*id.* at 23–26; McLemore Decl. ¶ 7).

Deputy McLemore then heard the white vehicle accelerate quickly towards the exit of the parking lot at speeds in excess of fifty miles per hour, which he determined constituted driving recklessly in violation of California law. Deputy McLemore activated his siren and lights and again pursued the white vehicle. After a brief pursuit, the driver exited the vehicle and ran back toward the store Yousif had entered. Deputy McLemore requested backup and chased the driver, while shouting verbal commands to him to get on the ground (McLemore Dep. at 27–28; McLemore Decl. ¶¶ 10–11). Deputy McLemore eventually caught the driver, who was later identified as Yousif's known criminal associate, Flores, and brought him to the ground. As Deputy McLemore struggled to gain control of Flores, backup arrived and helped place handcuffs on Flores (McLemore Decl. ¶¶ 11–12; McLemore Dep. at 33).

Yousif observed this altercation and approached, pointing a camera in the direction of one of the deputy's patrol cars. He pulled out a camera and asked "What's going on?" even as Deputy McLemore and the backup officer struggled to handcuff Flores and search him (Yousif Dep. at 22, 61; Council Decl. ¶ 6). Yousif's nearness led Deputy McLemore to release his hold of Flores, who continued to resist the backup officer's search. Deputy McLemore instructed Yousif to turn around and put his hands on his back, but Yousif continued to approach (McLemore Dep. at 34–35; Yousif Dep. at 27, 211).

Deputy McLemore removed his taser from its holster, turned it on, and pointed it towards Yousif, who continued to refuse to turn around and place his hands on his head and who was holding an object in his hand that Deputy McLemore could not identify. Once Yousif was close enough, Deputy McLemore determined Yousif was not an active safety threat and

2

deactivated his taser without discharging it. Deputy McLemore continued to direct Yousif to get on the ground and place his hands behind his back, to no avail. Deputy McLemore grabbed Yousif's left arm and attempted to move Yousif to the ground in order to place him under arrest. Deputy McLemore, with the assistance of the backup officer, then managed to get Yousif in a wrist lock, apply handcuffs, and conduct a search. Deputy McLemore then informed Yousif he was under arrest for violating Section 148 of the California Penal Code, which prohibits "willfully resist[ing], delay[ing], or obstruct[ing], any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ."

Meanwhile, Flores fled the scene, though Deputy McLemore and his backup eventually found Flores behind one of the stores in the shopping center (Council Decl. ¶ 12).

Yousif was transported to a police station. At the station, Deputy McLemore observed Yousif repeatedly raise his legs off the ground then slam them to the ground violently and overheard Yousif repeat "I want to kill myself" among other self-harm statements (McLemore Dep. at 63; Yousif Dep. at 169). Based on Yousif's behavior, Deputy McLemore believed plaintiff to be a danger to himself and referred Yousif to assessment by medical professionals pursuant to Section 5150 of the California Welfare & Institutions Code (McLemore Decl. ¶ 20).

Yousif, at first proceeding *pro se*, commenced this action in October 2015. His initial complaint related to six different encounters with the police (including the above-described encounter) and named a litany of defendants. Several defendants moved to dismiss (Dkt. Nos. 19–20, 23). He then obtained counsel and sought leave to file an amended complaint (Dkt. Nos. 27, 29). Yousif's attorney missed the deadline to file his amended complaint three times. Nevertheless, several extensions were granted and he met the fourth deadline set (Dkt. Nos. 34–35). The motions to dismiss were denied as moot (Dkt. No. 36). Several defendants then moved to dismiss the amended complaint (Dkt. Nos. 37–38). On the morning that his oppositions were due, Yousif's counsel sought an extension, which was granted (Dkt. No. 42).

An order granted in part and denied in part two separate motions to dismiss (Dkt. No. 54). That order allowed Yousif's claim against Deputy McLemore and another officer to survive and allowed him to seek leave to amend his claims as to the other defendants. Yousif

3

did not timely seek leave to amend, so the claims against that group of defendants were finally dismissed (Dkt. No. 62).

While this action remained pending, Yousif commenced a second action against the defendants that had just been dismissed. The new action came to the undersigned judge. The defendants therein moved to dismiss on *res judicata* grounds even though final judgment had not yet been entered in the first action. An order granted judgment under Rule 54(b) for those defendants, and Yousif voluntarily dismissed his second action. He then stipulated to the dismissal of Officer Dennis Loubal, leaving Deputy McLemore as the sole remaining defendant in the first action (this action). The sole remaining claims are for excessive force and for unreasonable seizure both arising out of the events detailed above.

The parties appeared before the court for numerous discovery disputes, several of which resulted in sanctions against counsel for Yousif (Dkt. Nos. 72, 79). Another discovery dispute ended in an order precluding Yousif's reliance on any facts or documents responsive to reasonable discovery requests that had not been provided in his initial disclosures or in his deposition (Dkt. No. 95). That order left open the possibility that terminating sanctions would be in order once the prejudice of Yousif's complete failure to respond to discovery requests became clear.

Deputy McLemore now moves for summary judgment, or, in the alternative, terminating sanctions. This order follows full briefing and oral argument.

**ANALYSIS**

To succeed under Section 1983, Yousif must prove that Deputy McLemore violated his constitutional rights while acting under the color of state law. The only two claims still in play are claims that Deputy McLemore used excessive force and unreasonably seized Yousif at the parking lot on September 20, 2015, and that Deputy McLemore further unreasonably seized Yousif by recommending medical examination due to his behavior at the station. Summary judgment is appropriate on a claim for use of excessive force if, "after resolving all factual disputes in favor of the plaintiff, . . . the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). The reasonableness of

4

1   a use of force is judged from a reasonable officer in the circumstances, and must allow for
2   officers "to make split-second judgments — in circumstances that are tense, uncertain, and
3   rapidly evolving — about the amount of force that is necessary in a particular circumstance."
4   *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Yousif offers limited discussion of the facts in his opposition. At his deposition, Yousif stated that Deputy McLemore "started running towards" him at some point after Yousif began walking away from the store (and toward the officers). Yousif acknowledged that he heard Deputy McLemore shouting commands, but that he "couldn't make out what he was saying clearly." He further testified that once the laser sight from Deputy McLemore's taser hit him, Yousif froze "like how a deer is like frozen with headlights," but Yousif offers no evidence regarding his distance from Deputy McLemore at the time Yousif stopped approaching the active scene. He stated he was "two steps" out of the store in the direction through the parking lot to his home, but that he was "still walking" when Deputy McLemore began to approach (Yousif Dep. at 22–23, 26, 32).

Yousif also described the moment Deputy McLemore pointed a taser at him (*id.* at 23):

> [Yousif]: And at one point, there was a red light — that hit my face — or hit my eyeballs, because like I could — I like remember just red went across my eyes. And I was like: Whoa
>
> [Question]: Can you explain what type of red light?
>
> [Yousif]: Laser.

Yousif's version of the story leading up to his physical encounter with Deputy McLemore does not conflict with Deputy McLemore's testimony. Deputy McLemore stated that he turned from Flores to Yousif once Yousif was approximately fifty feet away. He further testified that Yousif failed to comply with commands to stop, turn around, and place his hands behind his back, and that the two were close enough that Deputy McLemore feared for his safety due to Yousif's non-compliance before Deputy McLemore unholstered his taser (McLemore Dep. at 36).

The undisputed facts show that late at night in a parking lot known for criminal activity, Yousif approached the scene of an arrest of a confederate, with a small object in his hand, and

5

1 refused to heed clear instructions to stop approaching. Deputy McLemore recognized Yousif
2 and recalled that he had a criminal history, including multiple incidents involving interference
3 with police business, and he had seen Yousif exit the car driven by Flores (the other suspect)
4 minutes earlier. Although Deputy McLemore determined Yousif was not an immediate safety
5 threat before the arrest, Yousif's interference with police duties began when he approached the
6 scene with a small object in his hand (his camera), compounding the obstructive effect of his
7 approach  There is no genuine dispute about the material facts leading to Yousif's arrest.
8 Deputy McLemore had probable cause to arrest Yousif for obstruction of the discharge of the
9 patrol officers' duty.

10 Yousif's claim relating to Deputy McLemore's use of force fares no better. At his
11 deposition, Yousif described the altercation via his internal monologue at the time: "why is he
12 running towards me with a weapon [the taser?], why is he body slamming me, like you know?"
13 (*id* at 26). He later stated that his face had been "pushed into cement," that he had been "body
14 slammed," and that his "knee hurt" at the time. As a result, he had "scuffs and scrapes" (Yousif
15 Dep. at 164–66).*

16 Notwithstanding Yousif's vague description of injuries, he has produced *no* medical
17 records indicating treatment for an injury relating to this incident. Yousif's "conclusory
18 allegations unsupported by factual data" showing that "the forced used was unreasonable or that
19 [he] sustained actual injuries" cannot defeat summary judgment. *Arpin v. Santa Clara Valley*
20 *Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

21 Yousif also offers no defense to his claim that Deputy McLemore's referral of plaintiff
22 for assessment by medical professionals due to his behavior at the police station constituted an
23 unreasonable seizure. The undisputed facts show that Deputy McLemore reasonably believed
24 Yousif was a danger to himself.

---

* This order does not consider Yousif's purported statement that a medical examination that night "sound[ed] accurate" when it reported "no visible abrasions." That testimony purportedly appeared on page 189 of Yousif's deposition, but that page was not included in the record. Similarly, Exhibit 5 to Yousif's deposition, which appears to be the report in question, is not considered, inasmuch as there is no deposition testimony in the record relating to that document.

Apparently recognizing that he cannot offer facts to genuinely dispute Deputy McLemore's characterization of the events, Yousif's opposition instead principally relies on evidentiary objections, to which this order now turns.

Yousif objects to consideration of Deputy McLemore's and his own deposition because Deputy McLemore failed to submit the reporter's certification to authenticate the depositions in question. In *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002), our court of appeals held that a deposition transcript could not be considered on summary judgment motion where it lacked a cover page and the reporter's certification, and where the excerpted portions of the transcript lacked any reference to the purported deponent's name. Without any basis for identifying the transcript, it could not be authenticated even by an affidavit from counsel who was present at the deposition.

*Orr* left open, however, the possibility that a deposition could be authenticated even without the reporter's certification, if it could be authenticated from its contents. Indeed, here, unlike in *Orr*, both deposition transcripts include the deponent's name on each page. Moreover, *Orr* specifically held that where the objecting party provides the reporter's certification for the same document, the resulting authentication applies to both sides. This may extend even where the parties submit different excerpts provided, they are readily apparent as part of the same document. *See id.* at 776 n.16.

Here, Yousif himself submitted the reporter's certification for both depositions in question (as did McLemore in reply). The format and the labeling of the excerpts indicate that they are part of the same transcripts. Accordingly, Yousif's objection is **OVERRULED**.

Yousif also objects to consideration of McLemore's deposition because he "could not recall any facts" and "consistently had to read from his report" (Pl.'s Opp. at 7). This objection is also **OVERRULED**. FRE 612 allows a witness to use a writing to refresh his memory while testifying. Yousif has pointed to nothing in the record to suggest Deputy McLemore's reference to his report was improper.

7

All other objected-to materials, specifically, portions of Yousif's own testimony, Deputy Council's report from the night in question, and the CAD readout from the night in question, were unnecessary to this order, so the objections are **OVERRULED AS MOOT**.

This order need not reach the question of whether Deputy McLemore is entitled to qualified immunity inasmuch as there is no genuine dispute of fact about what occurred on September 20, 2015, and the undisputed facts show that Deputy McLemore acted reasonably. Nor does it need to reach Deputy McLemore's request for terminating sanctions.

## CONCLUSION

To the extent stated above, Deputy McLemore's motion for summary judgment is **GRANTED**. Judgment will follow.

**IT IS SO ORDERED.**

Dated: March 23, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE